743 P.2d 1

**PHYSICAL THERAPY ASSOCIATES, INC., a Texas corporation, successor in interest to Lifemark Physical Therapy, Inc., Plaintiff/Appellant,**

v.

**PINAL COUNTY and Pinal General Hospital, Defendants/Appellees.**

No. 2 CA–CV 5774.

Court of Appeals of Arizona, Division 2, Department A.

April 2, 1987.

Reconsideration Denied May 12, 1987.

Review Denied Sept. 15, 1987.

Fennemore, Craig, von Ammon, Udall & Powers, P.C. by Timothy Berg, Reed C. Tolman and Loral Deatherage, Phoenix, for plaintiff/appellant.

Roy A. Mendoza, Pinal Co. Atty. by Stephen M. Kemp, Florence, for defendants/appellees.

OPINION

HATHAWAY, Chief Judge.

This appeal involves an action brought for breach of a restrictive covenant. The court below granted appellees' motion to dismiss the action pursuant to Rule 12(b), Rules of Civil Procedure, 16 A.R.S. Appellant claims it was error for the court to grant the motion. We agree and reverse.

Appellant, Physical Therapy Associates, Inc. (PTA), is successor in interest to Lifemark Physical Therapy, Inc. (Lifemark). Lifemark and appellees, Pinal County and Pinal General Hospital (referred to collectively as the county), entered into a contract for Lifemark to provide physical therapy services to Pinal General Hospital during the 1983/84 fiscal year. The contract was not for a specific amount of money; rather, the contract itemized the amounts to be paid for individual services as rendered. Paragraph 7 of the contract provided:

Client (Pinal County) recognizes that Lifemark's entrance into this Agreement is induced in part by covenants and assurances made by Client that Client will not hire Lifemark's employees since irrevocable harm and damage would be done to Lifemark ... in the event Client hires any employee of Lifemark or its Affiliates. Therefore, Client agrees that during the term of this Agreement, and for a period of one year thereafter, Client will not, directly or indirectly, hire, contract with or be in any way associated with any employee or former employee of Lifemark or its Affiliates. Provided further, Client agrees that the hiring of any such employee or any attempt to induce any such employee to terminate his or her employment with Lifemark or its Affiliates shall be a breach of this restrictive covenant and shall entitle Lifemark to injunctive relief without necessity of bond, all in addition to any other rights to which Lifemark is entitled.

On May 21, 1984, the county awarded the physical therapy contract for the following fiscal year to Rehab Resources of America, Inc. (Rehab). Barry Broman, president of Rehab, is a former employee of PTA. On July 1, 1984, Rehab began providing services under its contract with the county.

PTA submitted its claim for the alleged breach to the board of supervisors on May 16, 1985. The board declined to consider the claim on the ground that it was not timely filed and therefore they had no jurisdiction to consider it. Subsequently, PTA filed this action.

The county moved to dismiss PTA's action under Rule 12(b) alleging: (1) that PTA did not file its claim with the board of supervisors within six months of the alleged breach, thereby depriving the court of subject matter jurisdiction under A.R.S. § 11–622; and (2) that PTA failed to state a claim upon which relief may be granted because the restrictive covenant is illegal and unenforceable under the county competitive bidding statutes.

Appellant claims it was error for the court to grant the motion because the restrictive covenant is not illegal, and because PTA did timely file its claim. If the court below was correct on either ground, that there was no subject matter jurisdiction or that PTA failed to state a claim upon which relief may be granted, this court would affirm. However, we find the court erred in both respects; therefore, we reverse and remand.

## SUBJECT MATTER JURISDICTION

In its motion to dismiss, the only basis for the county's allegation that the court lacked subject matter jurisdiction was that PTA had not complied with the terms of A.R.S. § 11–622 which mandates that:

A person having a claim against a county shall, *within six months after the last item of the account accrues,* present to the board of supervisors of the county against which the demand is held, a written itemized claim executed by him under penalties of perjury, stating minutely what the claim is for, specifying each item, the date and amount thereof, and stating that the claim and each item thereof is justly due. The board shall not consider a claim unless the demand therefor is presented within such time. (Emphasis added)

A.R.S. § 11–630(A) further provides that a claimant who is unhappy with the board's handling of his or her demand may then sue the county within six months after the board's final action. The parties herein all agree that a court has no subject matter jurisdiction unless a plaintiff complies with

these statutes. See *Yamamoto v. Santa Cruz County Board of Supervisors*, 124 Ariz. 538, 606 P.2d 28 (App.1979); *American Credit Bureau v. Pima County*, 122 Ariz. 545, 596 P.2d 380 (App.1979); *Norcor of America v. Southern Arizona International Livestock Association*, 122 Ariz. 542, 596 P.2d 377 (App.1979).

■ Our focus is on the language "within six months after the last item of the account accrues." A.R.S. § 11–622. The county argues that these words mean that the claim must be filed within six months of the date that the contract is breached. The county reasons that the six months started to run on July 1, 1984, the date that Rehab began performing under the contract, and expired on January 1, 1985. Thus, PTA's May 1985 claim to the board was untimely, thereby depriving the court below of jurisdiction. PTA contends that it had six months to file its claim following the date Rehab's one-year contract with the county ended.

When the six months set out in § 11–622 began to run is a troubling question for several reasons. First, there is a paucity of case law interpreting accrual under the statute. In *Cochise County v. Wilcox*, 14 Ariz. 234, 127 P. 758 (1912), the Arizona Supreme Court interpreted identical language in Arizona's Civil Code of 1901's county claim statute. The court stated that "[i]f the wording of the statute had read 'within six months after the last item of service is performed,' it would have conveyed the same meaning we attach to it in its present form." 14 Ariz. at 241, 127 P. at 761. Then, in 1984, the Arizona Supreme Court again addressed the question of accrual in *Fleming v. Pima County*, 141 Ariz. 149, 685 P.2d 1301 (1984). *Fleming* involved a county employee's claim of wrongful termination. The county had argued that the six-month period began to accrue when the employee was terminated. The court did not agree, noting that "[t]he items of damage (lost wages) were still accruing and the mitigating factors (earn-

ings from other, sporatic employment) were still accumulating so that the total amount of the claim could not be determined." 141 Ariz. at 151, 685 P.2d at 1303. Arizona case law offers little other guidance as to accrual under the unique language of A.R.S. § 11–622.

The accrual question is also difficult because, by its wording, the statute appears to be designed for open account cases, for example, where a vendor provides goods to a county and is then not paid. However, our case law indicates that the statute does apply to breach of contract cases such as the instant action. See *Yamamoto*, supra; *Norcor*, supra.

As appellant notes, § 11–622 does not say that aggrieved parties must present their claim to the board within six months of the accrual of the cause. The statute's direction that claims must be itemized, specifying "minutely" what is requested, indicates that the legislature intended that claimants have all their facts and figures organized before petitioning the board. See also *Fleming*. Because PTA's contract with the county provided for payment as services were rendered, PTA's damages and any offsets for mitigation, would not have been ascertainable upon the date of the alleged breach.[1] Given the limited case law, the language of *Fleming* and § 11–622's demand for a minutely itemized claim, PTA's interpretation of accrual under the statute is logical. In cases where the damages are immediately ascertainable upon breach, the county's interpretation also follows.

■ In light of the two possible interpretations, we must agree with PTA's position. Although a statute of limitations defense is legitimate, our courts do not favor it; therefore, when we have two reasonable but differing constructions of the statute, preference is given to that which affords the longer period of limitations. *O'Malley v. Sims*, 51 Ariz. 155, 75 P.2d 50 (1938).

---

1. PTA's claim was that if Rehab had not been awarded the contract, PTA itself would have been awarded that one-year contract. In examining PTA's appeal, we must take this allegation as true. *Citizens' Committee for Recall of Jack Williams v. Marston*, 109 Ariz. 188, 507 P.2d 113 (1973).

408

## THE RESTRICTIVE COVENANT

■ In its motion to dismiss, the county urged that PTA's complaint failed to state a claim upon which relief may be granted because the action PTA complained of was required by statute. In granting the motion, the court stated only that the plaintiffs failed to state a claim upon which relief may be granted. Since the court made no findings pursuant to Rule 41(b), Rules of Civil Procedure, 16 A.R.S., we will assume that the court agreed with the county that the restrictive covenant was unenforceable under the county competitive bidding statutes.

Appellant claims that A.R.S. § 11–254.01 is a general competitive bidding statute and that A.R.S. § 11–291(D) more specifically outlines the bidding requirements in situations involving a county hospital. Section 11–291(D) mandates that contracts be awarded by bid when they are for terms greater than two years. Therefore, appellant contends that the restrictive covenant is not illegal because the one-year physical therapy contract awarded to Rehab need not be awarded through the bidding process.

A.R.S. § 11–254.01(B) provides that:

All purchases of supplies, materials, equipment and contractual services, except professional services, made by the county having an estimated cost in excess of five thousand dollars per transaction shall be based on sealed, competitive bids.

The rest of the statute then goes on to outline the bidding procedure. Were there no other statute involving bidding for county contracts, we would need to examine the question of whether the restrictive covenant at issue is enforceable or whether it operates in contravention of the statute and is therefore unenforceable. However, A.R.S. § 11–251(5) gives the county board of supervisors power to "provide for the care and maintenance of the indigent sick of the county, erect and maintain hospitals therefor...." A.R.S. § 11–291(D) provides further:

In carrying out the powers and duties prescribed by section 11–251, paragraph 5, and subsection A of this section, the board may contract with any qualified person to provide all or a part of the services required. Such contracts may be for a term of not more than ten years. *All contracts for the operation of a county hospital for a term of more than two years shall be let to the best responsible bidder* after advertising for sealed bids in a newspaper and by notice posted in three or more public places in the county at least ten days before awarding the contract. The board may reject any and all bids. (Emphasis added)

It is apparent that A.R.S. § 11–291 specifically applies to "contracts for the operation of a county hospital," and that § 11–254.01 is a more general statute dictating that county purchases in excess of $5,000 be based on competitive bids. Specific statutory provisions control over general ones. *City of Phoenix v. Superior Court,* 139 Ariz. 175, 677 P.2d 1283 (1984). Consequently, we find that § 11–291(D), rather than § 11–254.01 contains the competitive bidding requirement for contracts to provide the physical therapy services at the county hospital. Because § 11–291 mandates competitive bidding only for contracts covering periods greater than two years, the restrictive covenant at issue here is not unenforceable as being in violation of Arizona's competitive bidding statutes.

The trial court erred in granting the county's Rule 12(b) motion on both grounds urged by appellees. We therefore reverse the court's judgment and remand for further proceedings. Appellants are awarded their reasonable attorney's fees pursuant to A.R.S. § 12–341.01. *Schweiger v. China Doll Restaurant, Inc.,* 138 Ariz. 183, 673 P.2d 927 (App.1983).

HOWARD, P.J., and FERNANDEZ, J., concur.